STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0958

James Poehler,
Respondent,

vs.

Cincinnati Insurance Company,
Appellant.

**Filed January 25, 2016**
**Reversed**
**Smith, Judge**

Hennepin County District Court
File No. 27-CV-14-18651

Alexander M. Jadin, Anthony T. Smith, Timothy D. Johnson, Roeder Smith Jadin, PLLC, Bloomington, Minnesota (for respondent)

Anthony J. Kane, Megan D. Hafner, Terhaar, Archibald, Pfefferle & Griebel, LLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Hooten, Judge; and Smith, Judge.

## S Y L L A B U S

Minnesota's prejudgment interest statute, Minn. Stat. § 549.09, subd. 1(b) (2014), does not apply to appraisal awards made pursuant to the terms of an insurance policy without an underlying breach of contract or actionable wrongdoing.

## O P I N I O N

**SMITH**, Judge

We reverse the district court's judgment granting preaward interest under Minn. Stat. § 549.09, subd. 1(b) (2014), because the statute does not apply to appraisal awards

pursuant to an insurance policy in the absence of an underlying breach of contract or actionable wrongdoing.

## FACTS

Appellant Cincinnati Insurance Company (Cincinnati) insured respondent James Poehler under a homeowner's insurance policy, which provided replacement-cost coverage for Poehler's home and personal property. As required by the statute governing fire insurance policies issued in Minnesota, the policy includes an appraisal clause providing that if the parties cannot agree on the amount of loss, either party may demand an appraisal. *See* Minn. Stat. § 65A.01, subd. 3 (2014). The policy also provides that the loss becomes payable within five working days after the filing of an appraisal award.

A fire damaged Poehler's property. Poehler promptly notified Cincinnati of the damage, and Cincinnati made its first payment on the claim a week after the fire. Cincinnati continued making payments and eventually paid the full amount of its original valuation: a total of $175,663.83.

Poehler disagreed with Cincinnati's valuation of his claim, and in December 2013, demanded an appraisal pursuant to his policy. The parties selected three appraisers, and an appraisal hearing was held in June 2014. The parties executed a separate agreement regarding the scope of the appraisal, indicating that the appraisers would "[m]ake a full and final determination of all issues with respect to James Poehler's insurance claim arising out of the October 4, 2013 fire." The agreement "specifically authorize[d] the appraisers and umpire to fully and finally decide coverage issues in addition to making a full and final decision as to the amount of the loss."

2

Poehler argued for an additional $170,442.55; Cincinnati argued for an additional $57,965.90. On June 23, 2014, the appraisers issued an award determining that Poehler's loss was $263,144.04 and awarded Poehler an additional $88,480.21. Cincinnati paid the appraisal award in full on July 9, 2014.[1]

Four months later, Poehler filed an action in district court seeking, among other things, confirmation of the appraisal award the Uniform Arbitration Act, *see* Minn. Stat. § 572B.22 (2014), and preaward interest under the prejudgment interest statute. *See* Minn. Stat. § 549.09, subd. 1(b). Cincinnati opposed Poehler's motion for interest, arguing that the prejudgment interest statute does not apply to appraisal awards unless they are coupled with a lawsuit predicated on an underlying breach of contract or actionable wrongdoing.

The district court found that the prejudgment interest statute applies to appraisal awards even without an underlying breach of contract or actionable wrongdoing. *See* Minn. Stat. § 549.09, subd. 1(b). Accordingly, the district court granted Poehler's motion for preaward interest.

## ISSUES

Did the district court err in granting preaward interest on an appraisal award pursuant to an insurance policy under Minn. Stat. § 549.09, subd. 1(b), when there was no underlying breach of contract or actionable wrongdoing?

---

[1] The trial court in footnote 2 of its memorandum attached to its order of March 19, 2015, addresses the time delay from June 23, 2014 as follows: "The Court notes that July 9, 2014 appears to be more than five working days after June 23, 2014. No one, however, suggested that Cincinnati was untimely in making its payment after the appraisal process was completed."

## ANALYSIS

**A.     Standard of Review**

"The availability of prejudgment interest is a legal issue that we review de novo." *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 390 (Minn. App. 2004), *review denied* (Minn. Aug. 25, 2004).

**B.      Preaward Interest on Appraisal Awards**

Cincinnati argues that the district court erred in awarding preaward interest in this case because payments made pursuant to a written contract, such as an insurance policy, are not compensatory damages and therefore not covered by the prejudgment interest statute. Cincinnati notes that the "appraisal was a contractually required, procedural mechanism for evaluating and determining the amount of loss," and it contends that because it complied with the statutory and contractual requirements, the appraisal award represents only the amount of the insured loss, not compensation for a breach of contract or actionable wrongdoing. We agree.

This court and the Minnesota Supreme Court have affirmed preaward interest on insurance awards, but only in cases based on an underlying breach of contract or actionable wrongdoing. *See ICC Leasing Corp. v. Midwestern Mach. Co.*, 257 N.W.2d 551, 556 (Minn. 1977) (noting that "the interest factor arose only because [defendant] contested its obligation and refused to pay the principal balance owed as of the date of default"); *David A. Brooks Enters., Inc. v. First Sys. Agencies*, 370 N.W.2d 434, 435-36 (Minn. App. 1985) (affirming arbitrator's award of prejudgment interest as an element of damages in "light of the strong preference in Minnesota for upholding the finality of an arbitrator's

4

award" where an insurance company disputed coverage and "refused to allow the appraiser to resolve the dispute"); *see also Lessard v. Milwaukee Ins. Co.*, 514 N.W.2d 556, 558-59 (Minn. 1994) (noting that preaward interest may be appropriate when a liability insurer had obligation to pay damages owed by tortfeasor but not when awarding interest would exceed policy's liability limits).

Minnesota's standard-fire-insurance-policy statute contains policy provisions that must be included in every fire insurance policy issued in Minnesota. Minn. Stat. § 65A.01, subds. 1, 3 (2014); *see also Krueger v. State Farm Fire & Cas. Co.*, 510 N.W.2d 204, 209 (Minn. App. 1993) (noting that the law "writes insurance statutes into policies"). The statute includes an appraisal clause, providing that if the insured and the insurance company fail to agree on the value of a loss, either may make a written appraisal demand. Minn. Stat. § 65A.01, subd. 3. Following the written demand, both parties must "select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand." *Id.* The statute also specifies that interest on the award begins to accrue after it becomes payable, which is 60 days after an appraisal award is filed with the insurance company. *Id.*

Poehler's policy provisions regarding appraisals comply with the requirements of the standard-fire-insurance-policy statute. *See* Minn. Stat. § 65A.01, subds. 1, 3. The language of the appraisal clause mirrors the statutory appraisal provision:

> If "you" and "we" fail to agree on the amount of "physical loss", either may demand an appraisal of the "physical loss". In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.

5

The policy, however, is more favorable to Poehler in one respect: under his policy, his loss becomes payable within 5 working days, while the statute only requires that it becomes payable within 60 days. *See* Minn. Stat. § 65A.01, subd. 3; *see also Krueger*, 510 N.W.2d at 204 (noting that "a fire policy can include broader coverage than the minimum requirements of the statute"). Because Cincinnati complied with the appraisal provision in policy, which is even more favorable than the mandated statutory provision, there was no breach of contract or actionable wrongdoing.

### 1. Compensatory Damages

Poehler argues that the payments Cincinnati owed him under the policy are compensatory damages and therefore eligible for preaward interest under the prejudgment interest statute. Poehler cites *Black's Law Dictionary*, 445 (9th ed. 2009), to define "damages" as "[m]oney claimed by, or ordered to be paid to, a person for loss or injury," and "compensatory damages" as "[d]amages sufficient in amount to indemnify the injured person for the loss suffered." Poehler maintains that because Cincinnati owed him money under the policy to compensate him for an injury, the payments are compensatory damages, despite the fact that Cincinnati did not cause Poehler's injury. We disagree.

Minnesota's prejudgment interest statute provides for "preverdict, preaward, or prereport interest on pecuniary damages." Minn. Stat. § 549.09, subd. 1(b). The statute does not define "damages," but it explicitly excludes damages that are "noncompensatory." *Id.,* subd. 1(b)(3). The United States Supreme Court has explained that damages "are given as a compensation, recompense, or satisfaction to the plaintiff, for an injury actually

6

received by him from the defendant." *Birdsall v. Coolidge*, 93 U.S. 64, 64 (1876). The Minnesota Supreme Court provided a similar definition:

> [I]n general, compensatory damages consist of both general and special damages. General damages are the natural, necessary and usual result of the wrongful act or occurrence in question. Special damages are those which are the natural but not the necessary and inevitable result of the wrongful act. We further construed the term "actual damages" as having the meaning ascribed by common law.

*Ray v. Miller Meester Advert., Inc.*, 684 N.W.2d 404, 407 (Minn. 2004) (quotations omitted).

Poehler's definition of damages finds no support in Minnesota caselaw or elsewhere. We note that *Black's Law Dictionary* further explains "damages" as "'the sum of money which a person wronged is entitled to receive from the wrongdoer as compensation for the wrong.'" *Black's Law Dictionary* 445 (9th ed. 2009) (quoting Frank Gahan, *The Law of Damages* 1(1936)). We therefore conclude that payments made pursuant to an appraisal clause in an insurance policy are not compensatory damages under the prejudgment interest statute.

Poehler further argues that because his insurance policy covers "physical loss," which it defines as "accidental physical damage," the appraisal award can be characterized as damages. Because damage to property and compensatory damages are manifestly different things, this argument fails.

### 2. Purpose of the Statute

Cincinnati also contends that preaward interest is not appropriate in this case because it is inconsistent with the purpose of the prejudgment interest statute. Cincinnati

argues that Poehler does not need to be compensated because Cincinnati did not wrongfully withhold funds to which Poehler was entitled under the policy, so the compensatory purpose of the statute is not served by applying preaward interest to appraisal awards under insurance policies. We agree.

Prejudgment interest serves two functions: "It compensates the prevailing party for the true cost of money damages incurred, and it promotes settlements when liability and damage amounts are fairly certain." *Casey v. State Farm Mut. Auto. Ins. Co.*, 464 N.W.2d 736, 739 (Minn. App. 1991), *review denied* (Minn. Apr. 5, 1991). "In interpreting section 549.09, this court should give the statute a meaning which will carry out its dual purpose." *Johnson v. Kromhout*, 444 N.W.2d 569, 571 (Minn. App. 1989).

In addition to fully compensating plaintiffs, prejudgment interest also deprives defendants of the "gain . . . resulting from the wrongful retention of the plaintiff's money." *Casey*, 464 N.W.2d at 740. Minnesota caselaw treats prejudgment interest as an element of damages. *See Hogenson v. Hogenson*, 852 N.W.2d 266, 276 (Minn. App. 2014) ("Preverdict interest is an element of damages awarded to provide full compensation by converting time-of-demand . . . damages into time-of-verdict damages." (quotation omitted)).

Here, there was no "wrongful retention" of Poehler's money. *See Casey*, 464 N.W.2d at 740. Poehler's appraisal award is different than an award for damages because the policy determined when he was entitled to payment, which was five days after the filing of the appraisal award. Besides Poehler's contention that Cincinnati should have valued the loss accurately and paid it immediately, there is no evidence that Cincinnati did not

8

comply with the terms and timeline of Poehler's policy or Minn. Stat. § 65A.01, subd. 3. Poehler does not contend that Cincinnati wrongfully withheld payment; he simply argues that he was entitled to it once he notified Cincinnati of the claim. Because Cincinnati promptly paid the award in full as soon as it became payable under the policy, Poehler did not suffer a loss of use of money to which he was entitled. Accordingly, the compensatory purpose of the prejudgment interest statute would not be served by awarding preaward interest.

Regarding the second purpose of the prejudgment interest statute, the appraisal process itself is the way the parties determine the "liability and damage amounts" when they are uncertain. *Id.* at 739. Here, neither party initially valued the loss accurately. At the time of appraisal, Cincinnati estimated the loss at $232,599.73, and Poehler valued it at $345,086.38. While we agree with Poehler that the prospect of preaward interest would incentivize insurance companies to dispose of claims as quickly as possible, we also agree with Cincinnati's argument that the incentive to take an unreasonable valuation goes both ways. In this case, Cincinnati argues that it would have been pressured to accept Poehler's valuation, which was significantly greater than the valuation made by the panel, or face owing additional interest. But even if awarding preaward interest in this context served the second purpose of the prejudgment interest statute, it would not be enough to overcome the fact that payments made pursuant to a written contract are not damages under Minnesota caselaw.

9

### 3. Public Policy

Finally, Poehler argues that this court should interpret the prejudgment interest statute to allow preaward interest on insurance appraisal awards as a matter of public policy. Poehler argues that without the prospect of paying preaward interest, insurance companies have incentive to drag out the process as long as possible within the bounds of the standard-fire-insurance-policy statute and the contract. He contends that "[w]ithout preaward interest, insurance carriers like [Cincinnati] would have no incentive to settle claims fairly or in a timely manner, but a tremendous incentive to undervalue, delay, and deny meritorious claims." Poehler's policy argument also recognizes that the insured is in a weaker bargaining position with regard to disposing claims quickly because the insured is living with the consequences of a loss. Poehler contends that if preaward interest were available on insurance appraisal awards, it would spread the risk of demanding an appraisal.

We acknowledge that Poehler's public policy arguments are strong, but this court is "not in a position to choose between public policy choices when [the law] unambiguously addresses the question before us." *Auto-Owners Ins. Co. v. Second Chance Invs., LLC*, 827 N.W.2d 766, 773 n.3 (Minn. 2013). Here, the statute unambiguously refers to damages. Because we find that the appraisal award cannot be characterized as compensatory damages, Poehler's policy arguments are unavailing.

## DECISION

We conclude that the district court erred in finding that the prejudgment interest statute applies to appraisal awards made pursuant to an insurance policy without an

10

underlying breach of contract or actionable wrongdoing. Accordingly, we reverse the judgment of the district court awarding preaward interest to Poehler. In light of our decision, we do not reach the additional issues raised by Cincinnati.

**Reversed.**